UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID HILL, | ) | Case No. 1:22-CV-2073 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer D. Armstrong |
| CLEVELAND BAKERS AND | ) | |
| TEAMSTERS PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff David Hill, Jr. is the son of decedent, David Hill, Sr. and the administrator of his father's estate. David Hill, Sr. is a former employee of Nickles Bakery in Cleveland, Ohio. In 2021, contemplating retirement, David Hill, Sr. applied to his pension fund for benefits, and received approval. Unfortunately, he passed away before any payments issued. After his father's death, Plaintiff applied for benefits as administrator of the estate and as a beneficiary. Twice, his claims were denied. Then, Plaintiff filed this action seeking to reverse the denial of benefits. Plaintiff and Defendant filed cross motions for judgment on the administrative record. (ECF No. 17; ECF No. 18.) For the reasons that follow, the Court **DENIES** Plaintiff's motion for judgment on the administrative record (ECF No. 17) and **GRANTS** Defendant's motion for judgment on the administrative record (ECF No. 18).

## STATEMENT OF FACTS

### A. Pension Plan Application

David B. Hill, Sr. was employed as a shipper at Nickles Bakery from September 1977 through December 2020. (ECF No. 14-1, PageID #109.) Throughout his employment, Hill belonged to the Cleveland Bakers and Teamsters Union and contributed to the union's pension fund. (*Id.*, PageID #159.) Hill retired on December 17, 2020 and requested an application for a pension on December 28, 2020. (*Id.*, PageID #65.)

On February 24, 2021, Hill submitted a pension application to the fund administrators. (*Id.*; *see also id.*, PageID #112). The application designated Hill's son, David Hill, Jr., as the beneficiary of any plan benefits and listed Hill's last day of employment as December 31, 2020. (*Id.*, PageID #126 & #128.) Hill listed the effective date for benefits as April 1, 2021. (*Id.*, PageID #121.)

The Cleveland Bakers and Teamsters Pension Plan sets a two-month waiting period between the date a retiree submits an application for a pension and the date benefits are first paid. (*Id.*, PageID #246.) To comply with the two-month waiting period, the Plan Administrator adjusted the pension's effective date to May 1, 2021—the first payment date two months after submission of the application. (*Id.*, PageID #112.) The Plan Administrator notified Hill of this adjustment on March 8, 2021 and requested additional documents. (*Id.*, PageID #108.)

On March 11, 2021, Hill passed away. (*Id.*, PageID #87 & #106.) As of that date, the Plan did not make any payments to Hill or his estate. (*Id.*, PageID #65 & #90–91.)

2

### B. The Pension Plan

Under the Plan, participants qualify for a pension based on their age and credited service at the time they cease working. (*Id.*, PageID #213.) The parties agree that Hill qualified for the "Golden 90" pension plan under Article IV, Section 4 of the Plan. (*Id.*, PageID #106, #159 & #228.)

### B.1. Payment of Pension Plan Benefits

Article VI of the Plan governs payment of pension benefits and contains the relevant provisions at issue that determine whether Hill's estate is entitled to payment. (*Id.*, PageID #243–45.) Section 1(A) specifies the date when payments will begin. It provides in relevant part:

> **Section 1 – Commencement and Duration of Pensions**
>
> A Participant who makes application in accordance with the provisions of the Plan shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his life, subject to all of the provisions of this Plan. Benefits shall be payable commencing with the first full calendar month after the Participant has fulfilled all the conditions for entitlement to benefits and ending with the payment for the month in which the death of the Participant occurs, except as otherwise provided in this Article or in Article V. The payment of benefits under the Plan to the Participant shall begin no later than the 60th day after the close of the Plan year in which occurs the latest of:
>
> (1)   the Participant's 65th birthday;
>
> (2)   the 10th anniversary of the year in which the Participant commenced participating in the Plan; or
>
> (3)   the Participant's Termination of Employment.

(*Id.*, PageID #243.)

Article VI, Section 1(B) addresses the death of a Plan participant. It states as follows:

> With respect to any payments which commence due to the preceding provisions of this section, the following clauses shall apply notwithstanding any provision of the Plan to the contrary.
>
> (1) In the event a Participant dies prior to the time distributions commence: . . .
>
>     (b) Any portion of the Participant's interest that is payable to a designated Beneficiary will be distributed either within five years after the Participant's death or over the life of the Beneficiary . . . .

(*Id.*, PageID #242–43.)

Finally, Article VI, Section 2 requires an application for the commencement of Plan benefits. In relevant part, it provides:

> **Section 2 – Advance Written Application Required**
>
> Application for a pension shall be made in writing in a form and manner prescribed by the Trustees and shall be filed with the Trustees at least two months, but not more than twelve months, in advance of the first month for which pension benefits are payable. If the required application is filed later than such date, payments will begin within 60 days from the date such application is filed and, if applicable, payments will be made retroactively to the date specified in the third and fourth sentences of Section 1 of Article VI.

(*Id.*, PageID #246.)

### B.2. Beneficiary Payments after Pensioner's Death

Article V is titled "Benefit in the Event of Death After Retirement." (*Id.*, PageID #242.) Under the Plan, where a pensioner "dies prior to the payment of benefits for 36 months," the named beneficiary is entitled to receive "the monthly

4

benefit that has been paid to the Pensioner for the remainder of the said 36-month period." (*Id.*)

### C. Plaintiff's Claim, April 8, 2021

After his father's death, Plaintiff submitted a claim for entitlement to the benefits under Article V. (*Id.*, PageID #98–105.) By letter dated April 8, 2021, the Plan Administrator denied Plaintiff's claim (*id.*, PageID #90–96) and explained that the guaranteed 36-month benefit under Article V is only available to the designated beneficiary of a "Pensioner," which is defined within the Plan as a "person to whom benefits are being paid" (*id.*, PageID #90–91). In the Administrator's view, Hill had not become entitled to a payment before his death; therefore, he was not a "Pensioner" for purposes of the Plan provisions. (*Id.*) As a result, Plaintiff was not entitled to the 36-month benefit. (*Id.*)

Plaintiff did not appeal the April 8, 2021 claim denial. (ECF No. 17, PageID #405; ECF No. 18, PageID #422.)

### D. Plaintiff's Claim, February 2, 2022

Following his denial of benefits as his father's beneficiary, Plaintiff opened an estate for his father. On February 2, 2022, Plaintiff advised the Plan Administrator that he was submitting claims in two capacities. (ECF No. 14-1, PageID #82.) First, as administrator of his father's estate, Plaintiff sought a single monthly payment for March 2021. (*Id.*) Second, Plaintiff resubmitted his prior claim for 35 monthly payments as the listed Beneficiary under Article V. (*Id.*, PageID #82–83.) By letter dated February 18, 2022, the Plan Administrator denied these claims as untimely. (*Id.*, PageID #78–81.) Also, the Administrator explained that Hill did not become

5

eligible for any payment in March 2021 because he died before any payment issued. (*Id.*)

Plaintiff timely appealed the denial of his second claim. (*Id.*, PageID 67–70.) In accordance with the Plan's required procedures, the appeal was presented to the Board of Trustees of the Cleveland Bakers and Teamsters Pension Fund for consideration at its regularly scheduled meeting on June 16, 2022. (*Id.*, PageID #61.) By letter dated June 22, 2022, the Plan denied the appeal. (*Id.*, PageID #61–64.) This lawsuit followed.

## STATEMENT OF THE CASE

At issue in this case is when Hill became entitled to benefits under the Plan. The Plan speaks only indirectly to the unusual circumstances presented, where Hill vested, applied for benefits, then passed away before receiving his first monthly payment. Plaintiff contends that Hill was entitled to benefits as of the date on which he submitted his application. (ECF No. 17, PageID #404.) Defendant asserts that entitlement to benefits arises only after the end of a two-month waiting period. Resolution of this dispute requires the Court to determine whether the Administrator's interpretation of the Plan in a way that precludes any entitlement to a benefit before the two-month waiting period was arbitrary and capricious.

## ANALYSIS

Section 502(a)(1)(b) of the Employee Retirement Income Security Act of 1974 allows Plaintiff to bring this action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to

6

future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(b). The Court adjudicates the merits of the claims "based solely upon the administrative record" and not pursuant to the summary judgment procedures set forth in Rule 56. Fed. R. Civ. P. 56. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).

A benefit plan may grant the plan administrator discretionary authority to determine eligibility and interpret the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where it does, a district court reviews a plan administrator's decision to deny benefits under the "highly deferential arbitrary and capricious standard of review." *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)). In this case, the parties agree that the Plan grants such authority to the Administrator. (ECF No. 17, PageID #407; ECF No. 18, PageID #424.) Accordingly, the arbitrary and capricious standard of review applies.

Under this standard, a reviewing court must affirm the decision of the administrator if the evidence in the record establishes a reasonable basis for the decision. *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693–94 (6th Cir. 1989). A plan administrator has not acted arbitrarily and capriciously if it is "possible to offer a reasoned explanation, based on the evidence" for its decision to deny benefits. *Perry v. United Food & Com. Workers Dist. Union*, 64 F.3d 238, 242 (6th Cir. 1995) (internal quotations omitted). Where the administrator's decision to deny benefits "is the result of a deliberate, principled reasoning process and . . . is supported by

7

substantial evidence," the decision will be upheld. *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of America Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

The arbitrary and capricious standard of review is not simply a "rubber stamp[]" of the plan administrator's decision. *Balmert*, 601 F.3d at 661 (quoting *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005)). "Deferential review is not no review, and deference need not be abject." *McDonald v. W.S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (internal quotations omitted). Where the plan administrator's interpretation creates internal inconsistency within the plan, this standard calls its decision into question. *Davis*, 887 F.2d at 695. Similarly, an interpretation that adds eligibility requirements may be arbitrary and capricious. *See Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). But a plan administrator's rational interpretation of plan provisions must be accepted, "even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). This deference extends to a plan administrator's interpretation of "ambiguous and general terms" of a plan. *Jones*, 385 F.3d at 661.

### I. Plaintiff's Claim as Administrator

The Plan Administrator determined that Hill died before fulfilling the conditions precedent to entitlement to benefits and, as a result, that the fund does not owe his estate a payment. Defendant interprets the plan document to require, as a condition of entitlement to benefits, a two-month waiting period between the time

8

the application is submitted and the time a claimant accrues benefits. This conclusion rests on the interpretation of Article VI of the Plan.

Under Article VI, Section 1(A), "[a] participant who makes application in accordance with the provisions of the Plan" is entitled to benefits, "subject to all of the provisions of this Plan." (ECF No. 14-1, PageID #243.) Those benefits "shall be payable commencing with the first full calendar month after the Participant has fulfilled all the conditions for entitlement of benefits." (ECF No. 14-1, PageID #243.) The next section, titled "Advance Written Application Required," describes the application process. It requires an application at least two months before the first payment of benefits: "Application for a pension … shall be filed with the Trustees at least two months … in advance of the first month for which pension benefits are payable." Put simply, Defendant reads the "conditions for entitlement of benefits" to include the written application requirements. (ECF No. 18, PageID #432.) The "conditions for entitlement of benefits" are not defined elsewhere in the Plan, and Defendant finds support in the Section 1(A) language that makes entitlement "subject to all of the provisions in [the] Plan." Arbitrary and capricious review requires that the Administrator's interpretation of the Plan be the product of a deliberate, principled reasoning process and supported by substantial evidence. *Balmert*, 601 F.3d at 501. This interpretation satisfies this standard.

As the administrator of his father's estate, Plaintiff argues that Hill's payments would begin in May 2021 but account for eligibility beginning in March 2021. He argues that other provisions in the Plan render Defendant's interpretation

9

internally inconsistent. (ECF No. 19, PageID #438.) Plaintiff points to specific language in the Plan that governs the death of a participant. Article VI, Section 1(B)(1) addresses the circumstance where a participant dies before distributions begin. (ECF No. 14-1, PageID #243–44.) Plaintiff reads this provision as "squarely contradict[ing]" Defendant's interpretation of the Plan because that language seems to support an interpretation that allows a participant to have accrued payments before the end of the two-month waiting period. (ECF No. 19, PageID #437.)

In Defendant's view, the provisions on which Plaintiff relies reflect Section 206(a) of ERISA. 29 U.S.C. § 1056(a). That statutory language, and by extension the parallel language in the Plan, sets certain dates when participants must begin receiving payment. In this way, the statute and the Plan protect a participant's right to benefits by triggering distribution upon certain events—a situation that has no application to participant's circumstances, says Defendant. (ECF No. 18, PageID #433; ECF No. 20, PageID #447–48.) Further, Defendant explains that the language of Section 1(B) tracks the language of another statute: Section 401(a)(9)(A)(ii) of the Internal Revenue Code, which prevents the continued use of pension funds as tax shelters and does not apply to Hill's circumstances. (ECF No. 20, PageID #447–48.)

Given the context and history of these provisions, the Court finds that Defendants' interpretation of the Plan represents a principled reasoning process, does not render the provisions of the Plan meaningless or internally consistent, and is not arbitrary or capricious. *See Balmert*, 601 F.3d at 501. A presentation by Plaintiff of

10

"an equally rational interpretation" does not change this determination. *Morgan*, 385 F.3d at 992.

## II. Plaintiff's Claim as Beneficiary

Under Article V of the Plan, benefits may be paid to the "Beneficiary[] of a Pensioner." (ECF No. 14-1, PageID #242.) The Plan expressly defines these terms. (*Id.*, PageID #198 & #204.) A "Beneficiary" means "the person designated in writing by a Pensioner to receive any benefits due and payable upon the death of the Pensioner under the terms of Article V hereof." (*Id.*, PageID #198.) And a "Pensioner" is "a person to whom benefits are being paid." (*Id.*, PageID #204.)

The Administrator determined that Hill did not accrue benefits and never paid him any. Therefore, he did not become a "Pensioner" within the meaning of the Plan. For this reason, Defendant's decision not to pay benefits to Plaintiff as his father's beneficiary is not arbitrary or capricious. Because Plaintiff is not entitled to benefits as a beneficiary, his argument that the futility exception excuses his failure to exhaust administrative remedies on his first claim is moot.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record (ECF No. 18), **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 17), and **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: January 24, 2024

                                                    J. Philip Calabrese
                                                    United States District Judge
                                                      Northern District of Ohio